[Cite as *Rocky River v. Collins*, 2017-Ohio-14.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104180**

## CITY OF ROCKY RIVER

PLAINTIFF-APPELLEE

vs.

## CARL A. COLLINS, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Rocky River Municipal Court
Case Nos. 15 TRD 02279 and 15 TRD 09998

**BEFORE:** Kilbane, J., Keough, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 5, 2017

**FOR APPELLANT**

Carl A. Collins, pro se
12621 Walnut Hill Drive
North Royalton, Ohio 44133


**ATTORNEYS FOR APPELLEE**

Andrew Bemer
Law Director
City of Rocky River
Michael J. O'Shea
Rocky River Prosecutor
21012 Hilliard Boulevard
Rocky River, Ohio 44116

MARY EILEEN KILBANE, J.:

{¶1} In this appeal, defendant-appellant, Carl A. Collins, Jr. ("Collins"), pro se, appeals from the revocation of community control sanctions in Rocky River M.C. No. 2015 TRD 02279, and also appeals his conviction for driving under an administrative license suspension and furnishing false information to a police officer in Rocky River M.C. No. 2015 TRD 09998. For the reasons set forth below, we affirm both cases.

Case No. 2015 TRD 02279

{¶2} The record demonstrates that Collins's driver's license has been suspended on multiple occasions from 2001 to the present. As is pertinent herein, Collins's driver's license was administratively suspended from September 24, 2014, until September 24, 2017, following his refusal to submit to chemical tests during an OVI arrest in Cleveland. *See Cleveland v. Collins*, Cleveland M.C. No. 2014 TRC 050482.

{¶3} Thereafter, on April 4, 2015, Collins was cited for violating R.C. 4510.14(A), driving while under OVI suspension, and Rocky River Codified Ordinances 335.09(A), proper display of license plates. On May 7, 2015, Collins pled no contest to a violation of R.C. 4510.11 (a lesser offense of R.C. 4510.14(A)), and the license plate charge was nolled. The court found him guilty of the violation and sentenced him to one year of community control sanctions and a $100 fine plus court costs. Collins appealed to this court, which affirmed the conviction and sentence. *See Rocky River v. Collins*, 8th Dist. Cuyahoga No. 103111, 2015-Ohio-4390 (*"Collins I"*).

{¶4} On December 9, 2015, the Rocky River Probation Department filed a community control violation complaint against Collins alleging:

> Mr. Collins violated the terms of probation which states no driving while license is suspended and obey all laws and ordinances [and he was charged] with a new case [on December 9, 2015 in Rocky River Case No.] 2015 TRD 9998 a [charge of driving under suspension].

{¶5} At a hearing on January 28, 2016, Collins waived counsel and admitted the violation. He explained that he had been at a party with his wife, and she had a few glasses of wine so he decided to drive them home. The probation officer also outlined some of Collins's license suspensions, which included one that began on September 24, 2014, because of an offense in Cleveland. The trial court subsequently sentenced Collins to 35 days of incarceration.

Rocky River Case No. 2015 TRD 09998

{¶6} This matter stems from the December 6, 2015 incident, in which Collins was cited with driving under an ALS suspension, furnishing false information to a police officer, and failing to operate his vehicle within a single lane of travel. On December 9, 2015, Collins filed a motion to suppress, alleging that he was stopped without probable cause.

{¶7} The trial court held a hearing on the motion to suppress on February 2, 2016. Collins argued that

> [t]he officer said * * * he followed me and viewed my license plates. I drove up beside the officer. He was stopped at a stop light and I drove up beside him and he was stopped on the forward going lane and I drove up in the turn lane. And so I find it very hard to understand how he would have viewed my license plates being that he was in front of me.

{¶8} Rocky River Police Officer Nicholas Diorio ("Officer Diorio") testified that on December 6, 2015, at approximately 8:50 p.m., he observed Collins's vehicle traveling southbound on Wagar Road and enter the left-turn lane near Westway Road. According to Officer Diorio, Collins's vehicle went left of the double yellow lines and into oncoming traffic by "almost a complete car length." Officer Diorio checked the license plate registration for the vehicle and learned that the registered owner, Collins, was subject to an administration license suspension. Officer Diorio stopped Collins's vehicle and spoke with Collins who was traveling with his wife. Officer Diorio asked Collins for his driver's license and proof of insurance. Collins replied that he had left his wallet at home. Officer Diorio then asked Collins for his social security number. Collins complied and provided a social security number.

{¶9} Officer Diorio conducted a Law Enforcement Agencies Data System ("LEADS") check using the social security number that Collins provided, but it did not indicate that the driver was subject to license suspension. According to Officer Diorio, while being booked into jail, Collins admitted that he had given the wrong social security number. He then gave the officer the last four digits of his correct social security number.

{¶10} The trial court subsequently denied the motion to suppress. The court stated:

The issues raised by the defendant during his argument, the Court believes they go to the credibility of the witness, of the officer. In other words, you

know what his actions were would be something that would be — I would allow wide latitude on cross-examination but I do not believe that they change the situation that we have here. And that situation is that there are two independent grounds that provide reasonable suspicion for the officer to stop the vehicle. I will state those for the record. Again, one is the traffic stop with the defendant going over the line, and as described by the officer which would in and of itself give reasonable suspicion to stop the vehicle. The second was that in these cars that the officer was in, they do have computers in the cars. And with those computers they are able to check the license status of a defendant. And it is well-settled law that if a computer check of that type is done and shows that a vehicle — that a driver is suspended, that that gives reasonable suspicion to stop the vehicle and question — to try to determine if the driver is the same person who is under suspension.

{¶11} On February 3, 2016, the matter proceeded to a jury trial on the charges of driving under suspension and furnishing false information. The charge of failing to operate a vehicle within a single lane of travel was tried to the court. The city presented testimony from Bureau of Motor Vehicles ("BMV") reinstatement officer Vickie Yonek ("Yonek"). Yonek testified that Collins's license was administratively suspended from September 24, 2014, until September 23, 2017, and was also suspended because of a 12-point license suspension that began on June 2, 2015. In addition, Collins's license

has been repeatedly suspended in other matters during the past ten years. Each of the suspension notifications were mailed to Collins at the address he provided to the BMV. The suspensions are linked to Collins's social security number.

{¶12} The city further demonstrated that Officer Diorio observed Collins driving his gray Chevrolet Traverse on December 6, 2015. Officer Diorio testified that the vehicle went left of the double yellow line while making a left turn. Officer Diorio learned from a LEADS check of the license plate that the owner of the vehicle was subject to an administrative license suspension. However, during the ensuing traffic stop, Collins provided the officer with a social security number that did not correspond to any license suspensions. Officer Diorio contacted his supervisor who used the number on Collins's driver's license and determined that Collins had provided a false social security number. Officer Diorio arrested Collins, and during booking at the jail, Collins admitted that he had given a false social security number during the traffic stop.

{¶13} Collins testified on his own behalf and stated that he had been driving, but did so because his wife had a few glasses of wine. He further stated that he did not have his wallet or money to make other transportation arrangements. He also admitted that while making a left turn, he moved left of the yellow line, but did so in order to avoid a parked car. As to furnishing false information to a police officer, Collins stated that he is 71 years old and has memory issues and also became nervous.

{¶14} The jury convicted Collins of driving under suspension and furnishing false information to a police officer, and the court convicted him of the lane violation. For

the offense of driving under suspension, Collins was sentenced to 60 days in jail, fined $750, and was permitted to satisfy the jail term by serving 90 days of house arrest with electronic monitoring. For the offense of furnishing false information to a police officer, Collins was sentenced to 90 days of incarceration, suspended, with a $250 fine. The court also imposed a $150 fine for the lane violation.

{¶15} Collins now appeals and assigns seven errors for our review.

<u>Scheduling of Community Control Violation Hearing</u>

{¶16} In the first assignment of error, Collins argues that the trial court erred in scheduling the community control violation hearing in Case No. 2015 TRD 02279 prior to the trial for driving under suspension and falsification in Case No. 2015 TRD 09998. He maintains that the court's scheduling resulted in his incarceration for the community control violation in Case No. 2015 TRD 02279 and prevented him from effectively representing himself in Case No. 2015 TRD 09998. Additionally, he maintains that there was no probable cause for the stop.

{¶17} As an initial matter, we note that the granting of community control is an act of grace that allows a convicted individual to go free on certain conditions and is also a contract for leniency between the offender and the sentencing judge. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 21. In a community control revocation proceeding, the state need not produce evidence of guilt beyond a reasonable doubt. Instead, the state must present substantial proof that the defendant has violated the terms of community control. *State v. Hylton*, 75 Ohio App.3d 778, 600 N.E.2d 821

(4th Dist.1991); *State v. Hollis*, 8th Dist. Cuyahoga No. 70781, 1997 Ohio App. LEXIS 2119 (May 15, 1997). The decision as to whether to revoke a defendant's community control is within the sound discretion of the trial court. *State v. McKnight*, 10 Ohio App.3d 312, 462 N.E.2d 441 (12th Dist.1983); *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 18.

{¶18} We further note that a trial court has broad discretion in managing its docket, setting case schedules, and scheduling orders. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 70 (8th Dist.), citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 1996-Ohio-159, 662 N.E.2d 1, syllabus.

{¶19} In this matter, although Collins contends that the court's scheduling and his incarceration prevented him from effectively disputing the issue of probable cause for the stop in Case No. 2015 TRD 09998, the record indicates that Collins asked the trial court to schedule the community control violation hearing "for any date after January 28, 2016." Collins had the entire period from the time of his arrest until January 28, 2016, in order to prepare.

{¶20} In addition, we note that once a defendant has demonstrated a warrantless search or seizure and has adequately clarified the basis upon which he or she challenges its legality, the prosecutor bears the burden of proof, including the burden of going forward with evidence. *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988). Here, Collins effectively clarified the grounds for his motion to suppress and put the burden of proof on the prosecutor to show the validity of the search.

**{¶21}** In any event, during the community control revocation hearing, Collins admitted the substance of the violations in Case No. 2015 TRD 09998.

**{¶22}** Accordingly, we cannot conclude that the trial court erred in its scheduling of the community control violation hearing.

Stop of the Vehicle

**{¶23}** Collins next maintains that there was no probable cause to stop his vehicle. Insofar as Collins raises this issue in connection with the community control revocation hearing in Case No. 2015 TRD 02279, we note that in *Collins I*, this court rejected an identical assertion and stated:

> [B]y accepting the city's plea offer and pleading no contest to driving under suspension, Collins waived his right to a disposition on his motion to suppress and rendered any issues raised in his motion moot.

*Collins I* at ¶ 8.

**{¶24}** Further, insofar as Collins raises this issue in connection with the charge of driving under suspension and other offenses in Case No. 2015 TRD 09998, we note that a police officer has probable cause to stop a vehicle where he or she observes a traffic infraction. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091. An officer also has probable cause to stop a vehicle based upon the LEADS information indicating that the driver is under suspension. *State v. Hansard*, 4th Dist. Scioto No. 07CA3177, 2008-Ohio-3349, ¶ 18. Therefore, in this matter, the trial court correctly determined that the issues raised by Collins were matters of credibility and that "there are two independent grounds that provide reasonable suspicion for the officer to stop the vehicle. One is * * * the defendant going over the line, and * * *. The second [is the computer check of the vehicle]." (Tr. 22.)

**{¶25}** In accordance with all of the foregoing, the first assignment of error is without merit.

### Evidentiary Issues

**{¶26}** In his second assignment of error, Collins asserts that the trial court erred in permitting Officer Diorio to testify that the initial report of the stop incorrectly indicated that Collins's vehicle was traveling northbound and was later corrected to indicate that he was traveling southbound. In the seventh assignment of error, Collins argues that Officer Diorio's written narrative of the stop was erroneously excluded from evidence.

**{¶27}** The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two

of the syllabus.

{¶28} Here, as to the second assignment of error, we note that the officer's testimony as to the change in the report goes to his credibility and is for the factfinder to assess. *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶29} Additionally, as to the seventh assignment of error, we note that the record indicates that Officer Diorio's narrative was admitted as an exhibit during trial as defendant's exhibit No. 1.

{¶30} In accordance with all of the foregoing, and in light of the fact that Collins admitted that he was driving and did go left of the yellow line, we cannot conclude that the court erred in permitting introduction of the evidence at issue or that the jury lost its way in evaluating the evidence.

{¶31} The second and seventh assignments of error are without merit.

LEADS Report

{¶32} In his third assignment of error, Collins argues that the city prosecutor failed to provide him with a LEADS report in discovery prior to trial.

{¶33} The city asserts that this request was not timely made in the trial court, but the record indicates that Collins sought all discovery on December 9, 2015. Nonetheless, since the record clearly indicates that Collins received notice of each of the individual suspensions listed on the LEADS report, and did not dispute that he was driving under suspension, we find no prejudicial error.

{¶34} The third assignment of error is without merit.

## Challenges to the License Suspension

{¶35} In the fourth assignment of error, Collins maintains that the trial court erred in convicting him of driving under suspension in Case No. 2015 TRD 09998 because the underlying suspension that was ordered in Case No. 2015 TRD 02279 was based upon an erroneous determination that the "plates in question were not obscured and covered." In the fifth assignment of error, Collins argues that the trial court erred in convicting him of driving under suspension in Case No. 2015 TRD 09998 while his appeal of that suspension was pending in this court.

{¶36} The record, however, does not support Collins's claims. On October 22, 2015, this court issued its opinion affirming the underlying suspension that was ordered in Case No. 2015 TRD 02279, and the trial on the new charges of driving under suspension and falsification took place on February 3, 2016. Therefore, the trial court did not err in so far as it concluded that a valid suspension was in place at the time that Collins was cited. Moreover, in *Collins I*, this court rejected Collins's claim that he had been improperly stopped and cited, so there is no basis upon which to challenge the license suspension that was in place at the time of Collins's arrest in Case No. 2015 TRD 09998.

{¶37} The fourth and fifth assignments of error are without merit.

## Court's Instruction

{¶38} In the sixth assignment of error, Collins argues that the trial court erred in failing to instruct the jury that his age and the stress of the situation could have led to him

furnishing a false social security number to Officer Diorio.

{¶39} We review the court's instructions to the jury for an abuse of discretion. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 73. We find no abuse of discretion here because Collins was permitted to testify regarding his age, memory issues, and nervousness. Evaluation of this testimony was within the province of the jury.

{¶40} In accordance with the foregoing, we conclude that the sixth assignment of error is without merit.

{¶41} For all of the foregoing reasons, the assignments of error are without merit and the conviction and sentence are affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
SEAN C. GALLAGHER, J., CONCUR